Good morning. Our first case is number 21-2817, United States vs. De Castro. Mr. Murski. May it please the court. My name is Kenneth Murski. I represent the appellant Amin De Castro. Mr. De Castro. Did you reserve time for rebuttal, sir? No, I did not. Okay, very well. Mr. De Castro filed a petition for writ of error quorum nobis seeking relief from his conviction for being an alien in possession of a firearm in violation of 18 U.S.C. section 922 G5A. Mr. Murski, could we see if we can agree on a starting point here, and that is that the quorum nobis standard is generally more stringent than what we would employ in an appeal, in a direct appeal, or in a collateral attack in habeas corpus. Yes. Okay. And would you then also agree that if your rehab claim were to fail hypothetical plain error review, section 2255 or 2241 review, that it would necessarily fail then under quorum nobis review? Yes, but I believe that we do meet the standard for plain error review. So just one more, if I may. Because you agree that quorum nobis is more demanding than plain error, if your claim fails under Greer, doesn't your claim necessarily fail as raised via a quorum nobis petition? Well, not necessarily. I mean, I think there's a different standard for quorum nobis than for a 2255 petition. Even though it's stringent, if we meet the prerequisites for a quorum nobis petition, then the court should grant that petition. And the lower court found that Mr. Cacastro had met all the prerequisites of the quorum nobis petition that this court had laid out in the case of Ragbear versus the United States. Now, the lower court denied the petition for other reasons, but the court did find that all the five prerequisites were met. And I think that we're especially... Well, I don't disagree with the way the district court proceeded, but once he proceeded to analyze the criteria for a quorum nobis and found all those criteria met, then the court should have granted the petition. I mean, the main issue is, since he found that Mr. Cacastro had asserted an error of a fundamental kind, in other words, went to the question of whether he was in fact guilty of this offense. And if he did not know that he was unlawfully in the country, he could not be convicted of this offense. But didn't he acknowledge... Wasn't the acknowledgment in the pre-sentence report fatal to the fundamental error analysis, whether it be a plain error review or procedural default? No, because clearly Mr. Cacastro knew he was an alien. He was born in the Dominican Republic. He was not a U.S. citizen. Right. And in a sense, he knew he was illegally in the United States because he had not obtained any permanent status. Right. However, that's not the same as saying he knew he was unlawfully in the United States. He acknowledged that, though, right? Right, but that's different than acknowledging that he knew he was unlawfully in the United States. Mr. Cacastro came to the United States in 2001. The offense occurred in 2014. He didn't come legally. Well, there's some question as to that. But even if he didn't come legally, he'd been in the United States for 13 years. He married a U.S. citizen. His wife filed a petition to have him admitted. That petition was approved. Now, that approval didn't grant him any immigration status. What about the USCIS notification that he himself received and from the National Visa Center? He did receive such a notice, right? He received a notice that said... And, yeah, part of what it said was the approval of this visa petition does not in itself grant any immigration status. Right, but he did receive a letter saying that the petition was subject to further consideration. So at the time he received that letter, which was before the date of his arrest, he did not believe that he was unlawfully in the United States, that he could remain in the United States at that time pending the disposition of his petition. All right, how do you square your contention that there's no evidence here that Mr. DeCastro entered the country illegally? That is your contention, is it not? No evidence that he entered illegally. Well, I know there is conflicting evidence in the record as to whether he entered illegally or not. But I don't think that has any... I don't think that controls the decision of this case. As I said, that was 13 years before his arrest. Well, in fact, his spouse's I-130 petition states affirmatively that he entered the country without inspection, right? Yes, but immigration was still considering his petition. They approved her petition for further consideration. He received a letter from immigration saying that they were going to continue to consider it. They didn't grant it, but they didn't deny it. So he was waiting for a decision as to whether he would be granted... You're trying to explain his statement, which appeared in the pre-sentence report. And his statement, which the pre-sentence report included, indicated that he knew he was not here illegally. Well, except that's not what the police report states. You never say to the officer at the time of his arrest that he was here illegally. He stated that he was a Dominican citizen. He what? He stated to the police that he was a Dominican citizen and that he wasn't alien. But the issue is, what was his state of mind, whether he believed he was lawfully or unlawfully in the country? If he knew his petition for permanent status was pending, he believed he was not subject to deportation at the time that he received the letter saying that he would receive further consideration of his petition. You know, honestly, if he had received a letter saying, your petition is denied, you've got to go, that would be one thing. But he received a letter saying that it's subject to further consideration. So after being in the country for 13 years, having married a U.S. citizen... But he knew how he got here. I mean, de Castro knew how he got here. Yes. He knew that he didn't get here legally. Yes. He was on a long voyage to get permanent status. He got this letter the day before he gets stopped with the weapon, and he's told you've advanced another step, but you're still not there yet. Isn't that state of mind sufficient based on what he knew initially about his entry? No, no, because he'd been in the country... Well, first of all, the letter wasn't received the day before. It was a month shortly before. But when he received that letter, he believed he could lawfully stay in the country until his status was determined. There's nothing to indicate that he was subject to deportation at that time. And since the immigration had approved the petition, subject to further consideration, he believed that it may be granted in the future. So at the time of his arrest, he could not believe he was unlawfully in the country. He believed he had the right to remain here until his petition was determined. Let's go to the fundamental error standard. Is it plain error or is it procedural default? Well, I think it's probably plain error. Why? Because... I mean, I think that's the proper standard to consider here. I don't think it's a procedural question. Isn't plain error a standard used on direct appeal? Yes, it is. And this is certainly not direct appeal. It's a collateral attack. Correct. Okay. But I still think it... You would consider that. Okay. All right. And I think under that standard, he's met all the criteria for showing that he's subject to relief because this is an error fundamentally affecting his rights. The question of whether he's innocent of this offense and whether he... When he pled guilty, if he had been properly advised that he had to admit that he was unlawfully in the country, he would not have pled guilty. And this would have allowed him... And this would not... So that he's entitled to have his conviction overturned because an element of the offense was not proven. He did not admit to it. And I believe the government cannot prove that he knew he was unlawfully in the country because, as I said, he thought at the time of the offense his immigration status was pending, could have been granted, and therefore he didn't have to leave the country. What case support do you have for the notion that someone who's seeking to get legal status has a right to remain in the country? Well, I think it's a question of the element of the offense is whether he knew he was unlawfully in the country. And having received these documents from immigration, he certainly believed he was lawfully in the country. Well, he's on the path to try to get lawful status, but he hasn't gotten it yet, right? Right. All right, well, if he hasn't gotten it yet, the inverse obtains, and the inverse is he is still here illegally. When somebody enters without inspection, that's the legal phrase for entering the country illegally, right? But many people who enter without inspection then file asylum petitions, et cetera, right? That's common. So you might get political asylum, for example, even after you enter the country illegally. But unless and until you get political asylum, you are in the country illegally, and you are subject to removal at any time. Isn't that the case? Well, that may be the case, but it's not what he believed. He believed that he could remain in the country pending the determination of his petition. But if he was erroneous in that belief, is that sufficient to warrant the extraordinary writ? Well, yes, because – Even if he was erroneous in that belief? Yes, because that's an element of the offense, that what he knew, what he believed at the time of the offense. And I think it's reasonable for him to – And that's a subjective standard, not an objective standard. Yes, and I believe it was reasonable for him to believe that he could remain in the country until his petition was determined. Do you deny that he told the officer who arrested him that he was in the country illegally? Yes. If you look at the police report, which is on page 116 of the appendix, De Castro stated he only had a passport from the Dominican Republic and that he was not a citizen and had no further identification. Nothing in that report saying that he had illegal status or anything of that nature. The pre-sentence investigator just extrapolated from that that he was here illegally. He didn't object to the statement in the pre-sentence report, though. Well, that's true, but as I said again, knowing that you're illegal because you don't have immigration status is not the same as knowing that you're unlawfully here. All right. And let's say that that distinction that you just made and the possible confusion as to the facts concerning whether he admitted or conceded exist here. Doesn't that, even if it's a close case, become more difficult for you proceeding under Coram Nobis than were you proceeding otherwise, as my preliminary questions suggest? Well, yes, to a certain extent, but I think he's still met that standard. Thank you. Thank you. Thank you, Mr. Burski. Ms. Rice. Thank you, and may it please the Court, Jessica Rice for the United States. As Judge Smith just pointed out, this Court has emphasized that the standard for obtaining Coram Nobis relief is the most stringent that a criminal defendant could possibly face, more demanding than the standard not only on direct appeal, but also than the standard applicable on habeas review. A Coram Nobis petitioner, like Mr. DiCastro, is seeking to upset a final conviction with a fully served sentence. And for that reason, relief is only available in truly extraordinary cases, and we submit that Mr. DiCastro does not present such a case. If Coram Nobis is more stringent than habeas, and EDPA tells us there's a one-year filing period, and here there was a 13-month delay, is it your argument that he's out of court just on timeliness? It is. We believe relief could be denied on that basis alone, and that would be the cleanest avenue for the Court to take here. But you went further than that, didn't you? Didn't you suggest that DiCastro should have petitioned for the Coram Nobis relief within a year? Didn't you argue that in your brief? We did, yes. But that is directly contrary to what we said in Ragbir, isn't it? I don't believe that it is, Judge Smith. I wrote Ragbir, and it says the writ has no strict time limit. It is true that the writ has no strict time limit, but this Court has also stated in Mendoza that the sound reason standard is even stricter than that used to evaluate 2255 petitions. So if a 2255 petitioner had filed a rehaif claim on the same day that Mr. DiCastro filed his Coram Nobis petition, that petition would have been summarily denied on that basis alone. So to treat Mr. DiCastro more leniently than a 2255 petitioner in the same position contravenes Mendoza. I understand that the District Court noted that Mr. DiCastro was not in the country at the time rehaif was decided, but he was out of prison. He was in a position to retain counsel. He did retain counsel to represent him. But let's look at the counterfactual, because to get back to Judge Smith's point, couldn't we conceive of some circumstances? You just gave a lot of factual reasons why there wouldn't be equitable tolling here. He knew or should have known what was going on. But we could conceive of circumstances where someone, through no fault of their own, doesn't know what's going on, and there might be passage of 15 months or 19 months or even years. Let's say the person was in solitary, for example. What do you say there on the timing issue? It's tricky, I think, because AEDPA is a statute that gives us the one-year timeline, right? But Coram Nobis, there's no statute, right? So how do we know that the one-year bar of AEDPA translates directly into Coram Nobis petitions? I would argue under the facts of this case, it should. I mean, this is based on statements from the court saying that the standard... I'm not sure what that means. I would argue under the facts of this case, except that are you suggesting that it's equitable in nature, and so we should, in each case, look at the amount of time that was taken based on totality, factual circumstances? Well, it is equitable in nature, but it is supposed to be more stringent than the 2255 standard. And there were how many months here? There were 13 months here. 13, right? Yes, yes. And in Mendoza, there was a delay of 14 months, and the court held that the petitioner did not establish sound reasons for delay. This isn't a ratchet that always works against you. I mean, there could be a two- or three-month delay that a court applying equitable principles says, that's too long. It's not in your rights. What I'm suggesting to you is, why shouldn't the standard that this court adopts for these sorts of things, consistent with longstanding equity practice, focus on the facts of the case rather than having some sort of fixed deadline? And could we have a fixed deadline by statute? Well, it does. It should focus on the facts of the case. And let me just add to Judge Hardiman's question. Is there really, in our deciding this case and in any opinion we wrote, any need to say anything more than we already have about having no rigid timeline? I think the court's prior statement comparing the sound reasons standard to the 2255 standard and suggesting it should be more stringent does militate in favor of a finding here that Mr. DeCastro waited too long. It should be decided on a case-by-case basis. Is that the strongest argument here? It is certainly not our only argument. There are other avenues. I mean, if that dog won't hunt, maybe you ought to turn to another. I will turn to the fundamental error prong of the Corum Nobis analysis. Mr. DeCastro's asserted fundamental error here is that he is actually innocent of the offense, that he did not know. Let me go back a step. Yes. The district court analyzed this both under the 2255 standard and under the RAGBAR standard. Which one was the correct way to analyze this question? We believe that the five-factor analysis set forth in RAGBAR is the governing standard, but some of those prerequisites require further elaboration. And so fundamental error, for instance, the asserted fundamental error here is actual innocence. And so it's our position that the 2255 standard for procedural default should apply to analyze that claim. Mr. DeCastro's claim was procedurally. Okay, but that's different than what the district court did in its analysis. It is. The district court determined that Mr. DeCastro could not satisfy plain error review, could not satisfy Greer. Certainly, if he cannot meet the Greer standard, he necessarily fails here, given that this is a collateral attack. So we agree with the district court that he can't meet plain error review, but we do believe that given the procedural posture of the case, a more stringent standard should apply. So you believe that procedural default should be the standard in evaluating fundamental error? Yes, we do. Mr. DeCastro admittedly did not raise the claim before the trial court or on direct appeal. So he needs to establish cause and prejudice. He needs to establish cause and prejudice or the alternative, and because he's raising an actual innocence claim, he would need to meet the 2255 standard for that, which would require that in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him had they been properly instructed of the elements. As I noted, we believe he can't satisfy plain error review. We certainly believe he does not come anywhere close to meeting the actual innocence standard. The record is really replete with evidence that he was aware of his illegal status as of the date of the offense. Contrary to Mr. Mursky's position, I don't believe there is any conflicting evidence in the record about how Mr. DeCastro entered the country. Do you agree it's a subjective standard as long as he believes that he has a right to be here, that's enough for him on that? I do agree that it is a subjective standard. I just don't think that the facts bear that out. He admitted to ICE officers the day after his arrest that he entered illegally through Puerto Rico in the early 2000s. As Judge Smith noted, his wife in the I-130 petition stated that he entered without inspection. And the method of entry is crucial in evaluating Mr. DeCastro's knowledge. The Baldy Court in the Second Circuit commented that a defendant who enters surreptitiously and without inspection would have no realistic defense that he thought he was legally present in the U.S. But that isn't the only evidence we have here. Mr. DeCastro stipulated repeatedly, both at trial and after he was granted a new trial in his guilty plea agreement and in his change of plea colloquy, that he was in fact here illegally on the date of the offense. He did that, but in support of his position, he, like everyone else in the system, did not know about rehave. No, he did not know about rehave. So he had no reason to quibble over whether he was here legally or illegally at those stages of the proceeding. Well, I think that here the language from Greer is instructive. The two defendants in Greer, their trial and guilty plea also preceded rehave. But the Supreme Court, commenting on an individual's knowledge of their felon status, said, if an individual is a felon, he ordinarily knows it, and that is not the type of thing that someone forgets. And our position is that that logic applies with equal force to immigration status. For a non-citizen residing in the U.S., like Mr. DeCastro, their immigration status is of utmost importance. And it most likely dictates many of their day-to-day decisions. So it is something that one can be expected to know. And so we submit that the fact that Mr. DeCastro admitted to being here illegally strongly suggests that he knew he was here illegally. And we also have the admissions and the pre-sentence report. Mr. DeCastro admitted during his interview that he had no status to visit, work, or live in the U.S. And as Judge Fisher noted, he did not object to the paragraph in the pre-sentence report stating that he admitted at the time of his arrest that he was present here illegally. And I also think that the one piece of evidence that Mr. DeCastro raises in his defense should be carefully scrutinized. This was an approval of an I-130 petition. That petition grants no legal status to enter or to remain in the U.S. It simply establishes a relationship between a U.S. citizen and an alien. And on the face of that one-page letter, the approval advises that it does not grant any immigration status and that it is not a visa, nor may it be used in place of a visa. And so even the one piece of evidence that Mr. DeCastro cites in his favor does not truly support his claim. There is nothing in that document suggesting that he could lawfully remain in the U.S. pending further immigration proceedings. And all of the other evidence in the record confirms that he was aware of his illegal status on the day of his offense. And I think it's helpful to contrast this case with cases in which a defendant has been found to satisfy plain error review. The Ray Haif case is an excellent example. There, Mr. Ray Haif was lawfully admitted to the U.S. on a student visa. At some point, that visa was revoked when he flunked out of university. But he litigated his knowledge of his immigration status from the beginning of the start of the case all the way up through trial. And the Baldi case out of the Second Circuit is similar. There, we had a defendant who vigorously argued not only that he didn't know he was here illegally, but that he was, in fact, here legally. He preserved that issue for appellate review in his guilty plea agreement. And he emphasized during his change of plea hearing that he thought he had been paroled into the U.S. on the date of the offense. We have nothing like those facts here. Mr. DiCastro admitted to entering illegally. He repeatedly stipulated to his illegal presence in the U.S. He did not object to the pre-sentence report after being appointed new capable counsel. And both the Ray Haifa and the Baldi cases were direct appeals. So this is quorum nobis. The standard is as tough as it gets. And we believe that whatever the applicable standard here, whether it's plain error review or actual innocence, Mr. DiCastro does not come close to meeting it. And for that reason, the district court's denial of relief should be affirmed. If there are no further questions, that will conclude my argument. Thank you. Thank you, Ms. Rice. We thank both counsel for the very helpful arguments. The court will take the matter under advisement.